IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALLEN PAYETTE,

                       Plaintiff,                            OPINION & ORDER

   v.

DR. ROBERT HOBDAY and EVELYN KILLIAN,                  14-cv-515-jdp

                       Defendants.

---

     Pro se plaintiff Allen Payette, an inmate at the New Lisbon Correctional Institution, is proceeding on Eighth Amendment deliberate indifference and state law medical malpractice claims that defendants Robert Hobday (the prison dentist) and Evelyn Killian (a dental assistant) forced him to undergo a surgical dental procedure with an anesthetic to which he was allergic, which caused him heart-related problems.

     Defendants have filed a motion for summary judgment, and plaintiff has filed motions for recruitment of counsel and a motion in limine. Both sides have filed motions to stay proceedings in this case. After considering these filings, I conclude that there are disputed issues of material fact precluding resolution of plaintiff's claims on summary judgment, and that it is appropriate to recruit counsel to assist plaintiff with the complex medical issues raised in the case. Accordingly, I will deny defendants' motion for summary judgment, grant plaintiff's motion for counsel, and stay the proceedings in this case. Given my decision to stay the case to recruit counsel for plaintiff, the remainder of the parties' motions will be denied as moot.

FINDINGS OF FACT

The following facts are drawn from the parties' proposed findings of fact and supporting evidentiary materials, and are undisputed unless noted otherwise.

Pro se plaintiff Allen Payette is an inmate at the New Lisbon Correctional Institution. Defendant Robert Hobday is a dentist employed by the DOC at NLCI. Defendant Evelyn Killian is a dental assistant at NLCI.

This case concerns plaintiff's allergic reaction to local anesthetic used during surgical removal of one of plaintiff's teeth. In September and October 2013, plaintiff saw defendant Hobday, complaining of pain in his teeth. Initially, plaintiff felt pain while eating or drinking, but eventually, the pain was waking plaintiff up at night. Hobday ultimately diagnosed plaintiff with "irreversible pulpitis and gross carries (sic) at tooth #15" and decided that the tooth should be removed.

Defendant Hobday was aware that plaintiff believed he was allergic to lidocaine, a type of local anesthetic commonly used in dental procedures. But the parties dispute precisely what Hobday knew. During a previous appointment in January 2012, plaintiff talked to Hobday about a 2004 incident in which plaintiff had an allergic reaction to lidocaine. Hobday says that plaintiff told him that he experienced throat swelling. Plaintiff says that he also told Hobday that he had difficulties breathing, chest pains, and that his blood pressure dropped.[1] Plaintiff also mentioned an incident in the summer of 2011 in

---

[1] Defendants object to many of plaintiff's statements explaining what he told defendant Hobday about his previous allergic reactions to lidocaine. Defendants argue that plaintiff either fails to support his proposed findings with admissible evidence or that the statements run counter to his medical records. But plaintiff has provided affidavits and declarations stating his version of events, which are sufficient to support his proposed findings. *See* Dkt. 1 (verified complaint), Dkt. 2 (affidavit), & Dkt. 54 (declaration).

which plaintiff received lidocaine for "an issue with his leg." Hobday states that plaintiff told him that he had no ill effects from the use of lidocaine during the 2011 incident. But plaintiff says otherwise; after he was injected with the anesthetic, he fell, and nursing staff had to give him an epinephrine injection with an "epi pen" because of plaintiff's reaction. At a September 2013 appointment, plaintiff completed a medical history form stating that he might have an allergy to lidocaine and that he had a history of chest pain. Plaintiff talked to Hobday about having a history of atrial fibrillation.

At the October 10, 2013 appointment, Hobday discussed treatment options with plaintiff. General anesthetic gas was not available at NLCI. The parties dispute what other options were discussed. Hobday states that he gave plaintiff four options: (1) extract the tooth using local anesthetic, which carried risks because of plaintiff's allergy; (2) extract the tooth without anesthetic, which could be extremely painful; (3) delay the extraction and treat plaintiff with pain medication until the procedure could be arranged at another facility (presumably with a less risky anesthetic); or (4) do nothing. Plaintiff states that Hobday gave him only two options: (1) extract the tooth using local anesthetic; or (2) extract the tooth without anesthetic.

Plaintiff and Hobday further discussed plaintiff's allergy. Hobday says that plaintiff was "very vague" about his history of allergies and was unable to remember symptoms he suffered after having an allergic reaction. Plaintiff disputes this, saying that he told Hobday that his throat tightened, his blood pressure dropped, he had problems breathing, and he had chest pains.

Defendant Killian listened to the conversation while she was preparing for the extraction. She says that plaintiff did not make any objections to the use of local anesthetic.

3

But plaintiff says that Killian told him, "I can't believe [Hobday is] going to use a local anesthetic on you after you told him you are allergic to it."

Plaintiff ultimately signed a form authorizing Hobday to perform the extraction using local anesthetic. Plaintiff states that he felt compelled to do so given his lack of options.

Hobday took precautionary measures: he alerted the Health Services Unit (HSU) that plaintiff might have an allergic reaction and discussed possible responses to a reaction. He also had emergency supplies of oxygen and epinephrine on hand.

Hobday used an anesthetic called Septocaine. I infer from the record that Septocaine is similar enough to lidocaine to raise the possibility that someone allergic to lidocaine could suffer similar allergic reactions to Septocaine. Hobday administered the Septocaine in three separate, smaller doses to gauge whether plaintiff would have an allergic reaction. Plaintiff did not have an immediate reaction, so Hobday continued with the procedure. The surgery took about an hour. Killian assisted Hobday.

Hobday says that he plaintiff did not appear to have any allergic reaction at the time plaintiff left Hobday's area to wait for his medication in the HSU waiting room. Plaintiff disputes this, stating that he had "fluttering of the heart" during and after the procedure, and that he could not alert Hobday during the procedure because Hobday had his fingers in his mouth. Plaintiff says he told Hobday about the heart palpitations after the procedure, but Hobday did nothing to evaluate him.

About three hours after being dismissed from the procedure, plaintiff was seen by HSU staff for complaints of heart palpitations, chest pains, and dizziness after he passed out. Plaintiff was taken to Mile Bluff Memorial Hospital, where he was diagnosed with atrial fibrillation. After plaintiff continued to suffer symptoms he was sent to UW Hospital.

4

Plaintiff underwent a cardioversion to fix the problem, although he continued to suffer chest pains and fluttering for at least a few weeks following the tooth extraction.

Plaintiff was informed that, because of the October 2013 incident, future treatment using anesthetic will be in a medical facility that can provide a controlled environment.

ANALYSIS

A.  Summary judgment

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Plaintiff brings Eighth Amendment and state law medical malpractice claims against defendants Hobday and Killian for forcing him to undergo the surgical tooth extraction with an anesthetic that defendants were warned would cause plaintiff an allergic reaction. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Unlike many prisoner medical care cases, in which a prisoner alleges that medical staff completely failed to

5

treat a malady, plaintiff did receive treatment for his painful tooth, and defendants did take at least some precautions regarding a possible allergic reaction to the anesthetic. Plaintiff's claims center on the quality of care he was provided by defendants and whether they adequately considered how to extract his tooth given knowledge of his allergy to lidocaine. Thus, the question at issue with regard to these claims is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008).

Although plaintiff's Eighth Amendment claims require that the defendant acted with "deliberate indifference" rather than mere negligence, his constitutional and negligence claims raise similar issues with respect to the standard of care owed plaintiff. Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988).

The parties present quite different narratives about the amount of information plaintiff gave Hobday about his allergy before he performed the extraction and the options for treatment that Hobday gave plaintiff. Plaintiff's version of the facts suggest that Hobday was well aware of very serious potential allergic reactions plaintiff could have to the local anesthetic, yet forced plaintiff to choose between risking those side effects and undergoing the surgery without any anesthetic whatsoever. Plaintiff's facts also suggest that defendant Killian thought the use of Septocaine was dangerous but failed to do anything to stop

6

Hobday. These disputed issues of material fact are reason to deny defendants' motion for summary judgment on plaintiff's claims.

But even if I accepted plaintiff's version of the facts as true, I could not say as a matter of law that defendants' treatment decisions were such a substantial departure from accepted professional judgment that they acted with deliberate indifference, or that defendants were negligent. Defendants contend that plaintiff's claims fail under either a deliberate indifference or negligence standard because plaintiff's treatment fell within the applicable standards of care. Plaintiff does not provide countervailing expert testimony.

These are the type of medical claims that the Court of Appeals for the Seventh Circuit has suggested would benefit from recruitment of counsel or appointment of a medical expert. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even more challenging in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received"); *Garner v. Sumnicht*, 554 F. App'x 500, 501 (7th Cir. 2014) ("Under these circumstances, the district court should have attempted to recruit a lawyer for Garner, who appears to be unable to present a case dependent on medical evidence—yet has enough of a substantive claim that the court cannot dismiss it as obviously deficient.").[2]

Plaintiff twice renewed his motion for the court's assistance in recruiting him counsel, Dkt. 40 & 47, before briefing was completed on defendants' motion for summary judgment. It would have been premature to locate counsel for plaintiff before seeing proposed findings

---

[2] Defendants also move for summary judgment on qualified immunity grounds, but without further factual development of disputed issues regarding plaintiff's treatment or the standard of care, I cannot determine whether qualified immunity should apply. Defendants are free to renew their motion for summary judgment on qualified immunity grounds following recruitment of counsel for plaintiff.

of fact making clear whether there were truly disputed issues of material fact in the case. Now that the parties' summary judgment materials raise issues regarding the appropriateness of defendants' treatment, I will grant plaintiff's motion. The remaining schedule will be stricken and a new schedule set once counsel is located.

B. Remaining motions

Plaintiff has filed a motion in limine requesting that defendants be forbidden from detailing the nature of plaintiff's conviction at trial and from presenting any medical records predating plaintiff's October 2013 tooth extraction. I will deny this motion without prejudice to plaintiff again raising these issues should the case go to trial. I will not rule on plaintiff's requests without full briefing of the issues, but for the benefit of the parties, I will say that it is my usual practice to limit defendants' presentation of conviction evidence for impeachment purposes to the fact that the plaintiff prisoner is convicted of a felony. Also, given the nature of plaintiff's allegations about his history of allergic reactions to lidocaine, it is highly likely that I would allow defendants to present evidence from plaintiff's medical records predating the October 2013 extraction, because that evidence is likely relevant to proving or disproving his claims.

Both sides have filed motions to stay the proceedings in this case. Because I am staying the proceedings to recruit counsel for plaintiff, the parties' motions will be denied as moot.

ORDER

IT IS ORDERED that:

1. Defendants Robert Hobday and Evelyn Killian's motion for summary judgment, Dkt. 41, is DENIED.

2. Plaintiff Allen Payette's renewed motion for assistance in recruiting counsel, Dkt. 40 & 47, is GRANTED.

3. Plaintiff's motion in limine, Dkt. 63, is DENIED without prejudice.

4. The parties' motions to stay deadlines in this case, Dkt. 49 & 64, are DENIED as moot.

5. The schedule in this case is STRICKEN and proceedings are STAYED pending recruitment of counsel for plaintiff. If I find counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be held with to establish a new schedule for resolution of the case.

Entered May 10, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge